TRIDENT INDUSTRIAL PRODUCTS CORPORATION, Plaintiff-Appellant, v. AMERICAN NATIONAL BANK AND TRUST COMPANY, N.A., Defendant-Appellee (St. Bernice Manufacturing Company, Defendant).

First District (3rd Division)   No. 85—0994

Opinion filed November 19, 1986.

858

Ash, Anos, Freedman & Logan, of Chicago (Bruce T. Logan, George J. Anos, and Yolanda M. Kielar, of counsel), for appellant.

Beutsch, Levy & Engel, Chartered, of Chicago (Michael J. Devine and Terese Keirnan-Shust, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Plaintiff, Trident Industrial Products Corporation (Trident), appeals from a judgment order entered March 21, 1985, in favor of the defendant, American National Bank and Trust Company of Chicago, N. A. (American). The following issues are presented for our review: (1) whether the trial court's findings of fact and conclusions of law were manifestly erroneous; (2) whether the trial court abused its discretion in denying Trident's motion to supplement its first amendment to complaint and denying its motion at the close of evidence to file a second amendment to the complaint to conform the pleadings to the proofs; and (3) whether the judgment order entered disposed of all the issues in the cause.

In 1979 St. Bernice was in default of its payment on a promissory note for $330,528.53 to Mercantile National Bank of Chicago, its secured lender. In December 1979 the note was assigned to American, which succeeded to a security interest in St. Bernice's accounts receivable, inventory, and other assets. In late 1980 St. Bernice advised American that it had been awarded a defense contract to manufacture sleeping bags for the United States Air Force. St. Bernice unsuccessfully sought loans from American to allow it to perform the contract and simultaneously pursued other avenues of credit. Trident had previously been one of St. Bernice's material suppliers but had severed its relationship with St. Bernice for nonpayment in the latter part of 1980, at which time it was owed $45,000.

St. Bernice approached Trident about supplying money and materials so that St. Bernice could perform the defense contract, but Trident refused to do so without either a letter of credit or an assignment of the contract proceeds. In September 1980, however, St. Bernice and American reached an agreement whereby the contract proceeds would be assigned to American, which would forward 90% of those proceeds to Trident. In December 1980 Trident started advancing materials to St. Bernice.

The September 1980 agreement was contingent upon cash contributions from outside investors who failed to provide the money, and the agreement was declared void. It was succeeded by a second agreement dated January 19, 1981. The signatories were American, Mercantile Holdings, Inc., and St. Bernice and its principals, David and Marjorie Goldberg. Trident was not a party to either the September 1980 or the January 1981 agreement.

The January 19, 1981, agreement provided that St. Bernice would pay off its indebtedness to American in monthly installments of $6,000 beginning February 19, 1981, and thereafter on the 19th of each month until the debt was extinguished. St. Bernice was to direct its account debtors to remit directly to American all money owed St. Bernice. Such money was to be placed in a special account. St. Bernice also was to assign to American its accounts receivable from the defense contract, which would be placed in the special account. American was authorized to deduct 10% of all funds so collected to credit against the principal balance on the promissory note. American was further authorized to deduct and pay 90% of all funds collected to Trident until notified jointly by Trident and St. Bernice that such payments should be discontinued.

The agreement also provides that the payments authorized "shall be made by [American] without prejudice to any of [American's]

rights and remedies which [it] may have on the note against [St. Bernice and/or its principals]." Paragraph 10 of the agreement states: "That in the event of a breach or default by [St. Bernice], or by any of the individual parties hereto, of any of the terms and conditions of this Agreement, such breach or default shall constitute default of the note and guarantees and shall thereupon cause the full aggregate indebtedness of [St. Bernice] ***, to become immediately due and owing to [American, which] shall be entitled to exercise all rights and remedies available to it."

The Department of the Army Defense Logistics Agency received and acknowledged the notice of assignment from St. Bernice but sent the first payment under the contract directly to St. Bernice. St. Bernice then transmitted 10% of the payment to American and $75,000 to Trident. On February 4, 1981, American received a government payment of $86,844, kept 10% and sent $78,159.60 to Trident.

On February 19, 1981, the first $6,000 installment on the promissory note became due. A notice of default was sent to St. Bernice when the payment was not received. St. Bernice assured American that more money would be forthcoming in the near future. A government check was received on March 9, 1981, from which American deducted $6,000 for the installment which was due on February 19, 1981, and of the remainder, kept 10% and sent 90% to Trident.

From each of the checks for defense contract proceeds received March 16, April 13, and May 22, 1981, American deducted $6,000, and, of the remainder, kept 10% and sent 90% to Trident. From the government check received on June 11 for $91,914, American deducted $6,000 and 10%, sent Trident $59,122.60 and also issued a cashier's check to St. Bernice for $17,600.

On June 30, 1981, American received a government check for $70,332. It kept 10% and remitted 90% to Trident, as no loan payment was due. Between July 1, 1981, and August 30, 1981, American received neither proceeds from the government contract nor the July 19 or August 19 loan payments. On August 20 a demand letter for default of the agreement was sent to St. Bernice and its principals. On September 3, 1981, a default letter was issued. Trident was notified of St. Bernice's default shortly thereafter.

American received more contract proceeds during the months of September and October 1981. Based upon meetings and phone conversations with St. Bernice, it was decided that American would keep 10% of the receipts to credit against the note. Sundry withdrawals in the amount of $10,918.26 were also credited to the note. The balance

was transferred to St. Bernice so it could continue its operations. American received no proceeds from the defense contract after October 31, 1981.

On December 24, 1981, Trident filed a complaint in chancery seeking injunctive and declaratory relief, specific performance, and an accounting of the funds collected by American pursuant to the January 19, 1981, agreement. On March 1, 1982, American filed a motion to strike and dismiss the complaint, and to transfer the cause to the law division for want of equity. American's motion to dismiss the complaint was granted on June 29, 1982, and Trident was given leave to replead over American's objection.

On August 17, 1982, Trident filed its first amendment to complaint in chancery for imposition of a constructive trust and other relief. The complaint alleges the creation of an oral agency agreement between American and Trident and the breach of that agency agreement and its attendant fiduciary duty. Trident prays for an accounting and equitable tracing of the funds collected by American from the defense contract. After American's motion to strike and dismiss the first amendment to complaint was denied, it filed an answer on June 28, 1983.

The cause was set for trial on March 13, 1985. On that date, Trident moved to file instanter a supplement to first amendment in chancery seeking to add two claims. Count I, for an accounting and equitable tracing, charges that American failed to exercise due diligence in the collection of St. Bernice's accounts receivable, thereby depriving Trident of 90% of some $218,000 allegedly received directly from the government by St. Bernice. Count II is pleaded in law, seeking judgment in Trident's favor and an award of compensatory and punitive damages. Trident's motion to supplement its first amendment to complaint was denied.

At the close of evidence, Trident moved to file a second amendment to complaint, which restates the allegations in the first amendment to complaint, adds allegations charging American with the breach of its fiduciary duty for its failure to exercise due diligence in the collection of the defense-contract proceeds, and seeks damages for breach of the purported agency agreement. Trident also added an alternative count at law seeking damages for its detrimental reliance on the agreement between St. Bernice and American. The trial court denied the motion to file the second amendment to complaint.

Following closing arguments, the trial court stated its findings of fact and conclusions of law in open court. The court found that the January 19, 1981, agreement between American and St. Bernice was

controlling and the rights of all parties to the litigation were determined thereunder. The court noted that Trident was not a party to the agreement but was a third-party beneficiary, and its rights under the agreement were those of a third-party beneficiary. The court stated that there was no evidence of a contract, either express or implied, between Trident and American and, further, that there was nothing in the evidence presented from which to imply an oral agency agreement nor any legal relationship between them. The court concluded that American was thus not a fiduciary of Trident, owed Trident no legal duty and there was, therefore, no breach of duty by American.

In its judgment order filed March 21, 1985, the trial court entered judgment in favor of American and denied Trident all requested relief, denied Trident's oral motion for leave to file the second amendment to complaint in chancery, and awarded American the costs of suit. Trident appeals.

■ Trident's first contention on appeal is that the trial court's findings of fact and conclusions of law were against the manifest weight of the evidence. Trident maintains that the evidence showed the existence of an oral agency agreement between Trident and American that was concurrent with the January 19, 1981, agreement between American and St. Bernice. Trident further maintains that the agency and/or the January 19 agreement itself created a fiduciary relationship and that American breached its fiduciary duty to Trident by self-dealing and misapplication of funds. Specifically, Trident points to the four deductions of $6,000 from the March 16, April 13, May 22, and June 11, 1981, government checks for contract proceeds and the remittance to St. Bernice of 90% of the contract proceeds received in September and October 1981. Trident also argues that American breached its fiduciary obligation to collect the St. Bernice accounts receivable.

The following testimony, in addition to that detailed above, was adduced at trial: Jerome Schneider, president of Trident at the time of the events in question, testified that in the latter part of 1980, he was contacted by Nicholas Alexander of American. Mr. Alexander told him that St. Bernice had a defense contract to manufacture sleeping bags and was looking for financing for the contract. Mr. Alexander indicated that St. Bernice wanted to buy materials from Trident and asked under what conditions Trident would do business with St. Bernice. Mr. Schneider replied that he would not extend credit to St. Bernice but would consider selling on a letter-of-credit basis or with an assignment of the defense contract to Trident's bank.

Mr. Schneider stated that American refused both suggestions and instead suggested that American take an assignment of the defense contract. Mr. Schneider further stated that on the basis of that conversation, American and St. Bernice drew up an agreement assigning the contract to American and giving 90% of the contract proceeds to Trident. The original agreement was drawn up in September 1980 but Mr. Schneider was later informed by Mr. Alexander that it had fallen through and was replaced by the January 19, 1981, agreement. Trident began shipping materials to St. Bernice on December 15, 1980, and began advancing working capital in January or February 1981.

In March 1981 Mr. Schneider received a phone call from Mr. Alexander stating that the bank had not received the first loan installment payment. Mr. Schneider testified that Mr. Alexander was seeking permission to deduct the overdue amount from the third government payment check. Mr. Schneider authorized the deduction in a letter dated March 10, 1981, but never authorized any other loan payment deductions or received other calls asking to deduct such payments.

Mr. Schneider stated that he received a copy of the August 20, 1981, demand letter from American's attorney and called Mr. Alexander to express concern that payments were not being received directly from the government. Mr. Alexander promised to investigate the matter and inform Mr. Schneider but never did so. Mr. Schneider received a copy of the September 3, 1981, default notice.

Mr. Schneider testified that the last payment from American was received in June or July 1981. He indicated that he was not aware at the time that American had wire transferred $17,600 to St. Bernice in June 1981. He stated that he had never discussed with anyone at American the potential results to Trident of a default by St. Bernice. He admitted that there was never a written agreement between Trident and St. Bernice but that prior to the September 1980 agreement he had discussed with American the arrangements to advance cash and materials to St. Bernice. Mr. Schneider testified that he had never authorized American to make any commitments for Trident and never asked to become a signatory to the January 19, 1981, agreement.

Mr. Nicholas Alexander, second vice-president in American's commercial banking department in 1980 and 1981, also testified. In 1980 he was supervising the liquidation of the loans acquired from Mercantile National Bank. Mr. Alexander stated that, by September 1980, American was very concerned about St. Bernice's ability to pay back its loan. David Goldberg contacted American to inform it that St. Benrice had been awarded the defense contract, and he made several

requests for further loans from American to allow St. Bernice to perform the contract. Mr. Alexander testified that he repeatedly refused to lend St. Bernice more money. He further stated that Mr. Schneider called him sometime in mid-1980 to learn the terms of the agreement between St. Bernice and American. Mr. Alexander told Mr. Schneider that, pursuant to the terms of the September 28, 1980, agreement and absent any default, 90% of the contract proceeds would be sent to Trident.

When the September 1980 agreement was abrogated, Mr. Alexander discussed the January 19, 1981, agreement with Mr. Schneider and may have sent him drafts of the proposed and final agreements. Mr. Alexander denied ever asking for Trident's approval of the terms of either agreement; rather, he testified that he merely informed Mr. Schneider what the terms were. Mr. Alexander stated that he knew of an agreement between St. Bernice and Trident for the supply of working capital and materials; however, he stated that because his borrower was St. Bernice and not Trident, he never discussed with Mr. Schneider how the advances from Trident to St. Bernice would be collected or any of the terms of the agreement. Mr. Alexander testified that Trident was never a party to the January 19, 1981, agreement and, when Mr. Schneider asked to be made a party, he was refused because the bank's agreement was with St. Bernice.

Mr. Alexander admitted that American deducted the $6,000 February 19 loan installment payment from the government check received March 9,1981. He stated that the March 10 letter from Mr. Schneider purporting to authorize such deduction was unsolicited and that the bank took no action on that letter. When questioned about the $6,000 deductions from the March 16, April 13, May 22, and June 11, 1981, checks, Mr. Alexander stated that he did not view the January 19, 1981, agreement as requiring outside authorization for those deductions.

Mr. Alexander also was questioned about the $17,600 sent to St. Bernice out of the June 11 government check. He stated that he had spoken to Mr. Goldberg and Mr. Schneider about the matter. Mr. Goldberg had asked him to wire transfer the money to a bank in Indiana to meet St. Bernice's payroll. Mr. Alexander agreed to do so if Trident would verify that the money was needed, and when he subsequently spoke to Mr. Schneider, he was given approval. He admitted that he never received written authorization for the wire transfer.

Mr. Alexander sent a copy of the September 3, 1981, default letter to Mr. Schneider, who called to express his dismay. American notified him that as a result of St. Bernice's default, the bank intended to

exercise its rights under the agreement. No further contract proceeds would be forthcoming, and all further receipts would be applied against St. Bernice's indebtedness to American. In response, Mr. Alexander received a letter from Mr. Schneider describing Trident's rights under the January 19, 1981, agreement as those of a third-party beneficiary and stating that he expected American to continue sending Trident 90% of the contract proceeds.

When American subsequently received contract payments from the government, Mr. Alexander decided what portion to apply against St. Bernice's debt and advanced the rest to St. Bernice to keep them in business. Mr. Alexander stated that there was no determination of a set percentage in that regard. Mr. Alexander denied ever agreeing to undertake the responsibility to do anything on Trident's behalf in connection with the St. Bernice loan.

Mary Jane Leidecker, of the Defense Contract Administration, testified regarding the payments sent from the government to American. An offer of proof was made concerning the contract payments sent from the government directly to St. Bernice. Roger Pillsbury, who took over some of Mr. Alexander's accounts after he left the bank, also testified. He stated that his knowledge of the events in question was limited to information available from bank records, and that he had no personal knowledge of them because he was not at the bank until August 1981.

In a trial without a jury where the testimony is contradictory, the weight to be given that testimony is a matter for the trial court, and its findings will not be disturbed unless they are against the manifest weight of the evidence. (*Norwood Builders v. City of Des Plaines* (1984), 128 Ill. App. 3d 908, 471 N.E.2d 634.) Where evidence is conflicting and where the evaluation of credibility or weight of evidence was made by the trial court, a court of review has no right to substitute its judgment for that of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as clearly to require a different conclusion. (*Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 447 N.E.2d 891.) For a finding or judgment to be against the manifest weight of the evidence, the opposite conclusion must be clearly evident. A reviewing court may not overturn a judgment merely because it may disagree or have come to a different conclusion had the issue been presented to the reviewing court in the first instance. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) Indeed, it is not sufficient to show that the record will support a contrary decision; we will affirm if there is evidence to support the trial court's judgment. *Gibson v. State Farm Mutual Au-*

*tomobile Insurance Co.* (1984), 125 Ill. App. 3d 142, 465 N.E.2d 689.

■ Our review of the record in the instant case fails to disclose a legal basis for this court to overturn the trial court's findings of fact and conclusions of law. We therefore affirm its determination that there was no oral agency agreement, confidential relationship, or any legal relationship between American and Trident. Consequently, no fiduciary duty was owed by American and there was no breach thereof.

■ Trident next contends that the trial court erred in refusing to grant its motion to supplement the first amendment to complaint and its motion to file a second amendment to complaint. The decision whether to allow an amendment to pleadings lies within the sound discretion of the trial court, and its decision will not be disturbed absent a showing of abuse of that discretion. (*Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488, 470 N.E.2d 1264; see also *Dick v. Gursoy* (1984), 124 Ill. App. 3d 185, 471 N.E.2d 195.) The trial court's power to allow amendments should be freely exercised so that a party may fully present its cause of action. (*Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 1274.) However, a plaintiff's right to amend his complaint is not absolute and, while permission is to be liberally allowed, the trial court has discretion to deny leave to amend. (*Petrella v. Leisky* (1981), 92 Ill. App. 3d 880, 417 N.E.2d 134.) Courts should not permit the amendment of a pleading if the other party would be prejudiced or surprised; the test for determining whether the trial court's discretion was properly exercised is whether allowance of the amendment furthers the ends of justice. *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 437 N.E.2d 872.

■ Generally, it is not an abuse of discretion to deny a motion to amend the pleadings on the eve of trial if the moving party seeks to set forth matters of which he must have had knowledge at the time of the original pleading. (*Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591.) Similarly, the allowance of material amendments after evidence has been closed rests largely in the discretion of the trial court, and its ruling will not be disturbed on review except in cases of clear abuse. To the end that justice may be done, the courts are liberal in allowing amendments to conform the pleadings to the proofs, but their materiality to the evidence already introduced must be apparent. *Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 396 N.E.2d 617.

■ We find no abuse of discretion in the trial court's denial of Trident's motions to file additional pleadings. When on March 13, 1985, the first day of trial, the court denied Trident's motion to supplement the first amendment to complaint, it noted that the matter

was a 1981 case which had been on file since 1982 and set for trial a month earlier. The court further noted that plaintiff's counsel had indicated two days earlier that Trident was ready to go to trial on the scheduled date. When Trident presented its motion to supplement, it indicated that the matters referred to in the supplement to complaint were learned during discovery. The court agreed with defense counsel that the claims Trident sought to add would require additional discovery. The court concluded that the allegations in the supplement to complaint had not been answered and would require a delay in the trial which the court refused to accommodate. We find no abuse of discretion in the court's denial of the motion to supplement the first amendment to complaint where Trident had ample opportunity to amend its pleadings during the three years in which discovery in the matter was conducted.

■ We further find no abuse of discretion in the trial court's denial of Trident's motion to file the second amendment to complaint, made after closing arguments were heard. The second amendment to complaint, *inter alia*, realleged a breach of fiduciary duty in American's failure to exercise due diligence in its collection of the defense contract proceeds and introduced a count at law based on Trident's detrimental reliance on the agreement between St. Bernice and American. The motion to amend was properly denied where the amendment bore no materiality to the evidence presented at trial, particularly where the trial court excluded all evidence of funds allegedly uncollected by American and sent directly from the government to St. Bernice.

Finally, Trident contends that the trial court's judgment did not dispose of all the issues in the cause. Trident suggests that the court could properly have found in its favor on either an alternative equitable basis, because it had an equitable lien against the special account set up at American, or on a legal basis by enforcing Trident's rights as a third-party beneficiary under the American-St. Bernice agreement.

Our determination above that the trial court's findings were amply supported by the evidence renders unnecessary further discussion of Trident's equitable-lien argument. Although plaintiff has brought to our attention various cases in which constructive trusts were imposed, they are inapposite to the instant case. Indeed, the trial court specifically stated, after finding no confidential relationship between Trident and American, that there was no basis for the impression of a constructive trust because there was no legal status between the parties.

■ ■ Trident also argues that the court should have entered

judgment for it on the basis of its third-party rights under the agreement. We note that the rights of a third party benefitted by a contract to sue thereon rest upon the liability of the promisor which must appear from the language of the instrument when properly interpreted and construed. The liability so appearing cannot be extended or enlarged on the ground alone that the situation and circumstances of the parties justify or demand further or other liability. (*Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 475 N.E.2d 1327; see also *Kessler, Merci & Lochner, Inc. v. Pioneer Bank & Trust Co.* (1981), 101 Ill. App. 3d 502, 428 N.E.2d 608 (third-party beneficiaries of a contract have no greater rights than the party under which they wish to claim).) The trial court correctly found that the January 19, 1981, agreement governed Trident's third-party rights. When St. Bernice defaulted on the agreement, Trident's rights thereunder were extinguished.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J., and WHITE, J., concur.