HERBERT TRACKMAN *et al.*, Plaintiffs-Appellants, v. PHILIP E. RINGER, as Trustee, Defendant and Appellee and Counterdefendant-Appellee and Counterclaimant-Appellee (Herbert Trackman *et al.*, Counterdefendants; Lynnor E. Rubens, as Personal Representative under the Will of Jack N. Rubens, Deceased, and Indiv., Counterclaimant-Appellee).

First District (2nd Division)   No. 87—2019

Opinion filed September 6, 1988.

1094

Jay S. Berlinsky and John S. Mrowiec, both of Greenberger, Krauss & Jacobs, Chartered, of Chicago, for appellants.

James M. Corcoran, Jr., of Corcoran & Corcoran, P.C., of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiffs-appellants Herbert Trackman (Herbert), Louis Trackman (Louis), Milton Gross (Milton), and Shirley Gross Berlinsky (Shirley) (collectively plaintiffs) brought this action against defendant-appellant Philip E. Ringer (Ringer) to compel Ringer, as surviving trustee of the testamentary trust created in article second of the will dated October 7, 1960, of Lillian Jean Rubens, to convey the property of that testamentary trust to plaintiffs. Lynnor Rubens, a potential competing claimant for the same property, was not named as a defendant in plaintiff's action. Therefore, Ringer filed a counterclaim against plaintiffs and against Lynnor, individually and as personal representative of her late husband, Jack N. Rubens. Ringer alleged the conflicting interests of plaintiffs and Lynnor and asked the court for direction. Lynnor filed a counterclaim against Ringer seeking a declaration that she was entitled to the trust property subject to the payment of income for life to two of the plaintiffs, Herbert and

Louis, and for other relief.

The sole issue involved was whether the late Jack N. Rubens, the only child of the testator, Lillian Jean Rubens, had a vested remainder in two separate 10% portions of the trust created under his mother's will. If Jack had a vested remainder, then Lynnor, as his widow, rather than plaintiffs, would be entitled to the trust property.

The trial court found in favor of Lynnor on her motion for partial judgment on the pleadings. At the same time, the court denied plaintiffs' motion for judgment on the pleadings or for summary judgment.

Because of the limitations inherent in these motions, there is no issue of fact. (*Egan v. Steel* (1985), 137 Ill. App. 3d 539, 485 N.E.2d 22; *Tompkins v. France* (1959), 21 Ill. App. 2d 227, 157 N.E.2d 799.) Therefore, both plaintiffs and Lynnor admit the meaning of the will is clear on its face, there is no ambiguity, and the "four corners of the document" show the dispositive intent of the testator, Lillian Jean Rubens.

In her last will and testament, Lillian Jean Rubens (hereinafter Settlor) exercised a power of appointment by creating four trusts. The first three were designated Trust A, Trust B and Trust C. Each of those trusts was to contain 10% of the Settlor's trust estate. The fourth part, Trust D, was to contain 70% of her trust estate.

The will directs the trustees to dispose of Trust A by paying $5,000 to the Settlor's sister, Mae Gross, out of the principal of Trust A. The income from the balance of Trust A was to be paid to Mae Gross, in convenient installments, during her lifetime. On her death, the principal was to be paid to Mae's son, Leon. If Leon was not then alive, it was to be "added to Trust D and disposed of as if the same had been a part of Trust D from the inception."

Mae Gross died in 1983, 22 years after the Settlor's death. One of her sons, Leon, predeceased her. She was survived by two children, plaintiffs Milton Gross and Shirley Gross Berlinsky. Following Mae's death, the principal of Trust A was paid to the Settlor's son, Jack, pursuant to the will.

The income from Trust B was to be paid to the Settlor's brother, Louis Trackman, and the income from Trust C was to be paid to the Settlor's brother, Herbert Trackman, during their respective lifetimes and on the death of each of them, the balance of Trusts B and C was to be *"added to Trust D and disposed of as if the same had been a part of Trust D from the inception."* (Emphasis added.) Louis and Herbert Trackman are still living and are also plaintiffs in this cause.

The income and principal of Trust D for the benefit of the

Settlor's son, Jack, was governed by article second, paragraph 5, which provided:

"(5)(a) To pay one-fourth (¼) of the principal of said Trust to my beloved son, Jack N. Rubens, as soon as the same can be conveniently paid to him; and to pay him the entire income from the balance of said Trust in convenient installments ***, until the final distribution of Trust D.

(b) *** to pay one-third (⅓) of the then balance of the principal of Trust D (to Jack) five (5) years after the date of my death.

(c) *** to pay one-half (½) of the then balance of the principal of Trust D (to Jack) ten (10) years after the date of my death.

(d) *** to pay the entire balance of Trust D (to Jack) fifteen (15) years after the date of my death."

Jack received the income from Trust D. In addition, Jack received one-fourth of the principal at the time of the Settlor's death. This was followed by the periodic five-year distributions of principal in 1966, 1971 and 1976, pursuant to paragraphs 5(b), (c) and (d) above.

Jack died on December 23, 1984. Since Jack's death, Ringer has acted as sole trustee. Jack's will was admitted to probate in 1985, and his wife, Lynnor, was appointed his legal representative. Jack is also survived by two sons.

Article second, paragraphs 6 and 7, of the Settlor's will provides:

"(6) If my son, (Jack), does not survive me, *or in the event of his death prior to the termination of Trust D hereinabove mentioned then, in either of such events, my Trustee shall pay to Evelyn Rubens, (Jack's wife), the sum of FIVE THOU-SAND DOLLARS ($5,000.00) to be her property absolutely and forever.*

(7) I direct my Trustees to divide the balance of my Trust Estate into three (3) equal parts and to pay one (1) such part to *** (brother Herbert Trackman) to be his property absolutely and forever, and to pay, transfer and deliver another part to (brother Louis Trackman), to be his property absolutely and forever, and to pay, transfer and deliver the third such part to (sister Mae Gross), to be her property absolutely and forever, or in the event of her death, prior to the date of distribution, to her surviving child or children in equal parts." (Emphasis added.)

After Jack's death, plaintiffs Herbert and Louis Trackman, and the surviving children of Mae, plaintiff's Milton and Shirley, brought this

action to compel Ringer, the surviving trustee, to transfer all assets held in Trusts B and C to them, except for $5,000 to be paid to Jack's widow, Lynnor, under article second, paragraph 6, of the will.

The trial court held, *inter alia*, that Jack had a vested remainder in the corpus of Trust B and Trust C. It therefore ruled in favor of Lynnor and against the plaintiffs. The appropriate Supreme Court Rule 304 findings were included in the court's order and this timely appeal followed. 87 Ill. 2d R. 304.

## I

■ The same rules that govern the construction of wills apply to the construction of trust instruments. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 513, 426 N.E.2d 1198.) The court's primary concern when construing a trust is to discover the Settlor's intent, which the court will effectuate if it is not contrary to law or public policy. (85 Ill. 2d at 513.) The trust at issue in this appeal is a testamentary trust created by the Settlor's will. Thus, the Settlor's intention is to be gathered, not from one clause of the will alone, but from the will as a whole and all of its parts, bearing in mind the plan of the Settlor as expressed in the entire will. (*Dyslin v. Wolf* (1950), 407 Ill. 532, 540, 96 N.E.2d 485.) "Such intention is determined in two ways: one by ascertaining the testator's actual meaning from the words employed, to which all rules of construction give way, and the other by finding his presumed intention by the application of rules of construction where the meaning is obscure, doubtful, or uncertain. Resort to such rules is necessary, however, only where the actual intent cannot be ascertained. If the intention may be gathered from the language of the will without reference to rules of construction, there is no occasion to use them. [Citation.]" *Wiener v. Severson* (1957), 11 Ill. 2d 347, 349, 143 N.E.2d 225.

■ Plaintiffs and Lynnor agree that the words employed by the Settlor are not "obscure, doubtful or uncertain." By granting Lynnor's motion for judgment on the pleadings and, at the same time, denying plaintiffs' motion for judgment on the pleadings or for summary judgment, the trial court reached the same conclusion. Because of the limitations inherent in such motions, there is no issue of fact. *Egan v. Steel* (1985), 137 Ill. App. 3d 539, 485 N.E.2d 22.

■ Where, as here, the trial court has determined the interpretation of a document as a matter of law, the reviewing court may independently interpret the document unrestrained by the trial court's judgment. *Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d

235, 240, 494 N.E.2d 830, *appeal denied* (1986), 112 Ill. 2d 598.

When interpreting the will, this court is to read the will, apply the established principles of law to it, and based on those principles, if the meaning of the will is clear, to order distribution pursuant to the terms of the will. *Peck v. Drennan* (1951), 411 Ill. 31, 38, 103 N.E.2d 63; *In re Estate of Carlson* (1976), 39 Ill. App. 3d 281, 350 N.E.2d 306, *appeal denied* (1976), 63 Ill. 2d 555.

Plaintiffs contend that paragraph 6 of article second imposes a condition that Jack must survive the life tenants, who in this case are plaintiffs Herbert and Louis. If he survived Herbert and Louis, the principal of Trusts B and C would be added to Trust D and pass on to Jack. By not surviving Herbert and Louis, the condition was not met and, therefore, Jack's widow, Lynnor, should only receive the $5,000 provided in paragraph 6. Then the balance of the principal in Trusts B and C should be distributed to the plaintiffs in accordance with paragraph 7 of article second. We disagree.

We find the Settlor's intentions here to be entirely evident from the language of the will. From a reading of the will and considering the evident purpose of the trusts, we conclude the Settlor intended that her son Jack receive the bounty of her estate as long as he survived her and was alive for the distribution of Trust D, 15 years after the Settlor's death, as provided in paragraph 5(d).

The Settlor transferred her property to trustees and directed that her assets be divided into four trusts. The sole reason for creating Trusts A, B and C was to provide that the income from those trusts be used for the support and maintenance of the Settlor's brothers and sister and her nephew, Leon, during their respective lives. Upon their death, the purpose of those trusts would be accomplished. The Settlor did not provide for any invasion of the principal of Trusts A, B or C, with the exception of an initial $5,000 payment to the Settlor's sister, Mae, from Trust A. Jack is the sole beneficiary of the principal of Trust D. "Where the sole purpose of a trust is to provide an income for a beneficiary during his lifetime, the trust terminates at his [the income beneficiary's] death, in the absence of provisions to the contrary." *Wiener v. Severson* (1957), 11 Ill. 2d 347, 350, 143 N.E.2d 225.

Clearly, the Settlor's brothers and sister possessed life estates. After the death of the life tenants, the balance of Trusts A, B and C was to be "added to Trust D and disposed of as if the same had been a part of Trust D from the inception." In 1976, which was 15 years after the Settlor's death, Jack received the balance of Trust D pursuant to paragraph 5(d). At that time, the Settlor's life tenants

of Trusts A, B and C were alive. In 1976, the remainder of their life estates vested in Trust D. Thus, when Mae died in 1983, 22 years after the Settlor's death (and her son, Leon, predeceased her), the balance of Trust A was "added to Trust D and disposed of as if the same had been a part of Trust D from the inception" and paid to Jack. The death of Jack in 1984 did not cause his vested remainder in Trusts B and C to become divested.

We also disagree with plaintiffs' argument that Jack's vested remainder in Trusts B and C was divested when he failed to survive Herbert and Louis.

By paragraph 5 of article second, the Settlor expressly provided that her son, Jack, receive certain portions of the income and principal contained in Trust D at her death, followed by distributions at five-year intervals. The Settlor expressly provided that Jack receive the entire balance of Trust D 15 years after her death. The will directs the termination and distribution of the "balance" of the principal of Trust D to be paid to Jack 15 years after the testator's death. Thus, the Settlor designated a time when Jack's right to receive the remainder vested absolute.

By paragraph 6 of article second, the Settlor anticipated the possibility of Jack dying either before her or before the final distribution of Trust D, 15 years after her death. Paragraph 7 of article second simply provides for the contingency anticipated in paragraph 6, namely, that if and only if Jack died before the Settlor or within 15 years of the Settlor's death, then Mae's surviving children would receive one-third of the remaining trust assets to be divided equally among each of them, Herbert and Louis would each receive one-third of the remaining trust assets, and Lynnor would receive $5,000. In our opinion, the Settlor expected Jack to survive her brothers and sister and to receive the remainder of their life estates.

■ We do not think that by the use of the words, "[Jack's] death prior to the termination of Trust D hereinabove mentioned," in paragraph 6, the Settlor intended to refer to an event different in time from that referred to in the preceding paragraphs of her will: "(d) *** to pay the entire balance of Trust D (to Jack) fifteen (15) years after the date of my death." *Wiener*, 11 Ill. 2d at 350.

Thus, the language of paragraph 6 providing for a gift upon Jack's death "prior to the termination of Trust D hereinabove mentioned" refers to the time which the testator had already appointed for termination of the trust, namely 15 years after her death. (*Wiener*, 11 Ill. 2d at 350.) Since Jack was alive at that time, he was entitled to distribution, and did in fact receive the distribution of the

cash balance of Trust D. In addition, his interest in the remainder of Trusts A, B and C vested in Trust D and became absolute. Therefore, upon Jack's death, his interest passed to his estate.

■ We therefore conclude that the trial court correctly determined that there was no triable issue of fact and that, as a matter of law, Lynnor, as the personal representative of her husband, Jack, had an absolute vested remainder in Trusts B and C.

## II

After the trial court's oral ruling on Lynnor's motion for judgment on the pleadings, Ringer and Lynnor were permitted to amend their answers.

Plaintiffs contend that certain verified admissions of Lynnor and Ringer constituted binding judicial admissions that precluded them from amending their pleadings. We disagree.

The Code of Civil Procedure provides:

> "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs ***." Ill. Rev. Stat. 1985, ch. 110, par. 2—616(c).

■ The decision whether to allow an amendment to pleadings lies within the sound discretion of the trial court, and its decision will not be disturbed absent a showing of an abuse of discretion. (*Trident Industrial Products Corp. v. American National Bank & Trust* (1986), 149 Ill. App. 3d 857, 866, 501 N.E.2d 273.) Courts should not permit the amendment of a pleading if the other party would be prejudiced or surprised. 149 Ill. App. at 866.

Section 2—616(c) of the Code of Civil Procedure is to be liberally construed to the end that cases be decided on the merits and not by procedural technicalities. (Ill. Rev. Stat. 1985, ch. 110, par. 2—216(c); *Bloom v. Landy* (1979), 72 Ill. App. 3d 383, 399, 389 N.E.2d 1286, *appeal denied* (1979), 79 Ill. 2d 609.) The test is whether the amendment furthers the interest of justice. *Trident*, 149 Ill. App. 3d at 866.

■ In the instant case, the sole issue presented by the parties' cross-motions for judgment on the pleadings require construction of the will. Where both parties have filed motions for judgment on the pleadings, as done in the instant case, it is generally conceded that no factual questions exist and that the issues presented to the court are solely issues of law. (*Zipf v. Allstate Insurance Co.* (1977), 54 Ill. App. 3d 103, 108, 369 N.E.2d 252.) Here, judgment was entered in favor of Lynnor as a matter of law.

■ Plaintiffs have failed to make a showing of any prejudice

caused by the amendments. Thus, under the liberal construction afforded parties to amend pleadings under the Code of Civil Procedure and the failure of plaintiffs to demonstrate any prejudice, we conclude that the trial court did not abuse its discretion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS* and SCARIANO, JJ., concur.

---

*Justice Stamos participated in the decision of this case prior to taking office as a supreme court judge.