*In re* ESTATE OF ADOLPH FANTOZZI (Lena Fantozzi, Adm'r, Petitioner-Appellant, v. Lake View Trust and Savings Bank, Respondent-Appellee).

First District (4th Division)   No. 1—88—1484

Opinion filed May 18, 1989.

Wahler, Pecyna & Fleming, of Chicago, for appellant.

Tishler & Wald, Ltd., of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

Lena Fantozzi, the administrator of her husband's estate, filed a citation to recover assets from Lake View Trust & Savings Bank. Her claim was premised on her discovery of a passbook among her husband's effects, 24 years after his death. The passbook showed a balance of $35,605.13 in an account presumably opened by her late husband. The trial court denied Fantozzi's petition for citation to recover assets.

On appeal, Fantozzi argues that the trial court erred in applying the rule that the law presumes payment of a debt that has been due and unclaimed for 20 years; the 20-year period had not run in any

event; the court erred in ruling that the bank's records need be preserved for only three years; and the court erred in holding that Fantozzi had failed to establish her cause of action.

We affirm the trial court.

BACKGROUND

In 1983 Fantozzi discovered a Lake View Trust & Savings Bank passbook when she was cleaning out an attic where her husband, Adolph, had stored his business and personal papers. The passbook showed an account number but listed no name. It showed a balance of more than $35,000 as of May 31, 1958, the date of the last entry. Fantozzi's husband died on May 2, 1959.

Lake View checked its records when Fantozzi presented the passbook, but found no evidence that the passbook was an open account. Lake View told Fantozzi to check with the Illinois Department of Financial Institutions, since under State law Lake View could not hold funds in an inactive account for more than 15 years but would have been required to turn them over to the Department. See Ill. Rev. Stat. 1983, ch. 141, par. 101.

The Department had no record that Lake View had turned over the account. Fantozzi then brought the instant citation proceeding in the probate court.

At trial, three witnesses testified. Fantozzi stated that she had no knowledge of her husband's income and that she had not known of the existence of the passbook account during her 12 years of marriage to Adolph. She had not searched through her husband's belongings after his death. She knew her husband had owned real estate but knew little about his actual income.

Fantozzi further testified that she and her husband had maintained a safety deposit box and a checking account at Lake View, both of which were released to her after his death. She testified that in 1959 they had purchased a house in Herrin, Illinois, for $14,000 in cash and had built an addition to it. She admitted that she did not know whether her husband had withdrawn funds from the passbook account between the date of the last deposit on May 31, 1958, and his death in May of 1959. She assumed that the passbook belonged to her husband because she found it among his possessions in the attic and no one else had access to the attic.

Robert Rybka, vice-president in charge of operations at Lake View, testified regarding the bank's record-keeping procedures. He had been employed since 1964. Until 1970, Lake View had maintained a dual system, using both hand-posted ledger entries and key-punched

computer entries. The original, official savings account records were kept after being hand posted into the ledger book after each transaction. After 1970, however, Lake View went fully "on-line" and kept only the computer-generated records.

Rybka testified that prior to 1970 manual entries were used for each savings account. He could find no ledger sheet for the account in question, although he had searched through the bank's oldest records, including an abandoned property report. Nor could he find the passbook number on the earliest computer interest run that he could find, dated December 27, 1962. He concluded from this that the account had been closed prior to the 1962 computer interest run because the passbook number did not appear thereon.

Mary Marcquenski, an employee of Lake View from 1953 to 1965, testified that Lake View used a ledger book with entries for every customer who had an account in the savings department. When the bank began using computer records, in 1959 or 1960, the ledger book was still used for a time, and in 1962 the handwritten entries in the book were compared to the computer run each day.

She further testified that if a depositor lost his passbook and wished to withdraw money from his account, he would be required to execute a lost passbook affidavit, which would then be stored in a vault with the closed ledger sheet. If someone later came in with the lost passbook, Lake View would have the affidavit to establish that the money had been paid out.

The procedure used in 1958 and 1959 would have been to freeze Adolph Fantozzi's ledger page in the book upon notice of his death, if the account were still open. Notice of his death would have been given to all departments. A pink card would have been put on the ledger page and would have remained there until the Attorney General's office, inheritance tax division, released the account to the decedent's representative. Based on her knowledge of bank procedures, her experience with Lake View, the absence of the passbook account number on the 1962 computer run and Mr. Fantozzi's death in May 1959, Ms. Marcquenski believed that the passbook was closed prior to Mr. Fantozzi's death.

OPINION

I

■ Fantozzi initially challenges the trial court's application of the assumption that a debt which has been due and unclaimed by the creditor and unacknowledged by the debtor for more than 20 years

has been paid, absent evidence to the contrary. (*Fagan v. Bach* (1912), 253 Ill. 588, 97 N.E. 1087.) She contends that she presented sufficient explanatory evidence to rebut the presumption.

Fantozzi's explanation as to why a demand had not been made until 24 years after her husband's death is that she had not discovered the passbook and was unaware of its existence until 1983. Accordingly, she argues, she had no earlier opportunity to demand payment, sue, or otherwise enforce payment.

Fantozzi's argument does not answer the main problem she faces: whether her mere possession of the passbook, coupled with the absence of an affidavit of lost passbook or other evidence of payment, amounts to sufficient evidence to rebut the presumption of payment. We find that it cannot.

In the pending case, the court did not apply a bare presumption without considering the evidence. In fact, the court noted at the close of her case that she had presented a *prima facie* claim and accordingly denied the bank's motion for directed finding. The record indicates, however, that two witnesses testified regarding bank procedures and that their testimony supports the trial court's determination that the debt had been paid before Adolph Fantozzi's death. This circumstantial evidence includes the probability that an open account would have appeared on the computer run of 1962, which was at the time cross-checked by the hand-written ledger entries. Moreover, the fact that a Lake View checking account and safety deposit box in Adolph's name were frozen at the time of his death supports the inference that any other account in Adolph's name would have been discovered at the same time, since notice of a depositor's death went to all departments of the bank. Finally, under the Uniform Disposition of Unclaimed Property Act (Ill. Rev. Stat. 1961, ch. 141, par. 101), an inactive passbook would not have remained at Lake View for more than 15 years because State law requires the payment of such accounts to the Director of the Illinois Department of Financial Institutions.

■ Fantozzi's claim is based on her possession of the passbook, which is insufficient by itself to establish the right to withdraw funds shown deposited in the book. (See *American Union Financial Corp. v. University National Bank* (1976), 44 Ill. App. 3d 566, 358 N.E.2d 646.) In this case, especially given the amount of time that has passed, we believe that Fantozzi would have had to present much stronger evidence to rebut the presumption and prove her claim. She admits that her husband purchased a home in 1959 for $14,000 in cash and that she did not know the source of his income. She had no

knowledge of the passbook account until her discovery of the passbook 24 years after her husband's death. She had no way of knowing whether he withdrew the money before his death or even if the funds belonged to him personally.

■■ The mere fact that Lake View did not have a lost passbook affidavit among its records does not prove her claim. The bank had no record of the account at all. The general records it did have tend to support the inference that the account was not open at the time Adolph died, since an open account presumably would have appeared on the 1962 computer interest run. Even assuming that the account was still open at the time of Adolph's death, and that somehow this account escaped notice when the safety deposit box and checking account were released, at some point the account would have been turned over to the State as an inactive account.

The trial court heard the evidence, drew inferences from the testimony and records presented, and resolved the matter in favor of Lake View. We will not overturn the trial court's findings because they are not contrary to the manifest weight of the evidence.

## II

Fantozzi also maintains that even if the 20-year period applies, it should not have begun to run until the demand for payment was made. She argues that the 20-year period cannot be applied against the decedent-depositor because he died 11 months after his last deposit. The bank's bylaws provide that after the lapse of 10 years without activity in the account, the bank is not obligated to pay interest, a fact that Fantozzi suggests bears some significance on when the 20-year period begins to run. She concludes that it was her demand in 1983 that began the running of the 20-year period.

■ Contrary to Fantozzi's assertion that Adolph's death prevented the commencement of the 20-year period as against him, we believe that the date of death is key to the running of the 20-year period. As of May 1959, when he died, Adolph could no longer make a demand on the bank for payment, assuming the account was still open at the time. Accordingly, the bank would have been obligated to release the account to the administrator of Adolph's estate, his wife, who was also his sole heir. This is what the bank did with the safety deposit box and checking account, upon proof of Adolph's death and the widow's heirship. Had Fantozzi thoroughly searched through Adolph's papers in connection with her duties as administrator, she probably would have discovered the passbook within a short time of his death. Then it would have been a simple matter to verify whether

or not the account had in fact been paid out.

Twenty-four years later it is not so simple. Records are lost or destroyed. In any event, we are not persuaded to create a "discovery" rule of such magnitude as would circumvent the requirement that claims be brought before they become stale. Fantozzi's evidence did not rebut the presumption of payment; even if we determined that the presumption did not apply, however, her evidence was insufficient to prove her claim.

## III

■ Because of our holding, we need not comment on the length of time that a bank should be required to keep records. We express no opinion on the applicability of the Uniform Preservation of Private Business Records Act (Ill. Rev. Stat. 1983, ch. 116, pars. 59, 60), which provides for a three-year period for the preservation of private business records. We do not believe, however, that Lake View had a duty to keep records of the passbook account for 24 years. The evidence indicated that the account had been closed before Adolph's death. Therefore, we cannot agree that Lake View violated any contractual or statutory duties owed to Mrs. Fantozzi.

## IV

■ Fantozzi's final argument is that the court erred in finding that she did not establish her cause of action. Because this did not come up on appeal on a section 2—615 motion to dismiss (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), we are unsure of the significance of this issue. The court did not find that she had failed to state a *prima facie* case and in fact denied Lake View's request for a directed finding at the close of her case. Presumably, Fantozzi's argument is that the court's findings were against the manifest weight of the evidence. We do not agree. The trial court heard the evidence, judged the credibility of the witnesses, and concluded that Fantozzi had failed to prove her claim. In so doing the court resolved all conflicts in the evidence. See *Trident Industrial Products Corp. v. American National Bank & Trust Co.* (1986), 149 Ill. App. 3d 857, 865, 501 N.E.2d 273.

For the foregoing reasons we affirm the judgment of the trial court.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.