LIMA LAKE DRAINAGE DISTRICT OF ADAMS COUNTY, Plaintiff-Appellant, v. HUNT DRAINAGE DISTRICT OF HANCOCK COUNTY, Defendant-Appellee.

Third District   No. 3—90—0140

Opinion filed October 12, 1990.

Lewis, Blickhan, Longlett & Timmerwilke, of Quincy (George J. Lewis, of counsel), for appellant.

Capps, Ancelet & Stoverink, of Carthage (David F. Stoverink, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Lima Lake Drainage District of Adams County, filed suit against the defendant, Hunt Drainage District of Hancock County, for breach of contract. The plaintiff alleged, *inter alia*, that the defendant had failed to remove the internal waters from a 692-acre area of land within the defendant district and had allowed water therefrom to flow into the plaintiff district. The defendant filed a counterclaim for damages on behalf of certain landowners within its district, alleging that the plaintiff had failed to drain water from certain land within the defendant district as required by an agreement between the parties. Following a bench trial, the court ruled that the contract between the parties had not been breached. The court further ruled that the plaintiff's claim was barred by the applicable 10-year statute of limitations. Thereafter, the court denied the plaintiff's motion to reconsider. The plaintiff appeals.

The record reveals that the parties are public levee and drainage districts. The defendant district consists of approximately 16,039 acres and is situated wholly in Hancock County. The plaintiff district consists of 13,476 acres and is situated wholly in Adams County. The southern boundary of the defendant district is coextensive with the northern boundary of the plaintiff district.

During the 1880's, both districts were organized and were each protected by a levee constructed by the Army Corps of Engineers. The levee formed the western boundary of the districts. In May of 1920, the commissioners of the respective districts agreed to formulate and implement a comprehensive scheme of internal drainage for the benefit of both districts. To accomplish that task, they employed engineers Robert Isham Randolph and Webster P. Bushnell to make a study and survey of both districts and to report thereon with the necessary maps, plats, plans, profiles, and estimates of cost for the proposed work.

On February 1, 1921, the drainage plan proposed by engineers Randolph and Bushnell and their report, together with the maps, plans, profiles and estimates of cost for the proposed work, were approved by the respective districts and were expressly made a part of the contract governing the internal drainage of the districts. The contract provided among other things that the internal drainage of each district was to be the burden and obligation of each district individually and that neither district should permit its internal waters to flow into and upon the lands of the other. The contract excepted a 2,050-acre area of land in the southeast corner of the defendant district, known as the Wehner territory. Water arising upon the Wehner territory was to be drained into the plaintiff district.

Thereafter, the engineers submitted an amended report and plan of drainage dated June 1, 1922, which was also approved by the respective districts. On July 26, 1922, the Adams County and Hancock County courts, after making some modifications, approved the contract, which incorporated by reference the 1921 and 1922 engineering reports.

Construction of the drainage project was completed by the early 1930's. In 1981, the plaintiff filed the instant suit alleging that the defendant had violated the contract from its inception to the time of the filing of suit in that the defendant throughout that period had failed by means of ditches, drains, levees, and pumping plants to take care of and remove the internal waters from a specified 692-acre area located in the defendant district and not a part of the Wehner territory. The plaintiff further alleged that the defendant had breached the contract by permitting water arising on the 692 acres to flow into and upon the lands of the plaintiff district. In support of its position, the plaintiff relied on the following contractual language:

"[T]he internal drainage of each district is the burden and obligation of each district individually; and *** each district shall by means of ditches, drains, levees and pumping plants, take care of and remove the internal waters within its boundaries and protect its lands and the other district therefrom at its own proper charge and expense and without cost or contribution from the other district in such behalf; and neither district shall suffer or permit any of its internal waters to flow into and upon the lands of the other district, except however that the water arising upon a tract of land in the southeast corner of Hunt Drainage District embracing 2050 acres, hereinafter referred to as the Wehner Territory, and hereinafter more particularly bounded and described, but excluding the waters of

the remainder of the district, shall, subject to the terms and conditions of this contract, be drained into the ditches of the Lima Lake District."

Prior to trial, the defendant filed a motion to dismiss the plaintiff's complaint, alleging that the plaintiff's claim was barred by the applicable statute of limitations. The trial court granted the defendant's motion, but allowed the plaintiff leave to file an amended complaint alleging only breaches of contract occurring in the 10 years preceding the suit and during its pendency.

The plaintiff subsequently filed an amended complaint. In count I, it sought damages for increased pumping and ditch clean-out costs incurred during the 10 years before the filing of the suit and thereafter. In count II, it requested a mandatory injunction to compel the defendant's future compliance with the contract. In count III, it requested in the alternative that the defendant reimburse the plaintiff pursuant to sections 11—2 and 11—9 of the Illinois Drainage Code (the Code) (Ill. Rev. Stat. 1989, ch. 42, pars. 11—2, 11—9) for future expenses resulting from the defendant's failure to perform under the contract.

The evidence at trial showed that water from the 692-acre area in the defendant district did drain upon the land of the plaintiff district, thereby increasing the ditch clean-out and pumping costs in the plaintiff district beyond what they would otherwise be. The evidence further showed that the situation had remained the same from the time the parties completed their work in the early 1930's until the time of trial. The evidence also showed that the ditches and levees in the area in question were constructed in accordance with the plans approved by the district commissioners and the county courts in 1921 and 1922.

Given that the instant trial commenced more than 60 years after the contract was approved by the county courts, no testimony was presented from the framers of the contract, the engineers who prepared the drainage plans, or the original landowners affected by the drainage system. However, various witnesses, including the current commissioners of both districts, testified either that they were unaware that the 692-acre area drained into the plaintiff district or that they believed the area was part of the Wehner territory.

William Klinger testified that he had worked as an engineer for the plaintiff from 1936 until 1972 and for the defendant from the early 1940's until the time of trial. He stated that he was aware of the 692-acre area, but believed it was part of the Wehner territory. He noted that he had knowledge of the contours of the 692-acre area and that he periodically reviewed the contour maps with the commissioners of both districts. He further noted that those maps showed that

the drainage of water from the area in question was southerly, toward the plaintiff district.

In denying the plaintiff relief, the court found that an ambiguity existed in the contract between the general language requiring each district to be responsible for the drainage of water arising within its boundaries, except for the Wehner territory, and the more specific engineering-related provisions regarding the location and design of ditches and levees. The court further found that the more specific language in the engineering plans was controlling, that all the ditches and levees were constructed in accordance with those plans, and that therefore the contract had not been breached. The court also found that the plaintiff's action for damages and injunctive relief was barred by the 10-year statute of limitations applicable to written contracts. Additionally, the court denied the plaintiff the alternative relief requested in count III of its complaint, noting that the statutory sections relied upon were inapplicable to the instant case because the parties had previously determined their rights pursuant to a binding written contract.

On appeal, the plaintiff contends that the trial court erred in interpreting the contract. In that regard, it argues that the most specific reference in the entire contract is the exception created for the Wehner territory. Therefore, it continues, since the Wehner territory represents the only exception from the requirement that each district assume responsibility for its internal drainage, the court erroneously carved out an exception for the 692-acre area. The plaintiff also contends that the court erred in denying it the statutory relief requested in count III of its amended complaint.

In response, the defendant argues on appeal that while the contract provided generally that the defendant should drain its own internal waters with the exception of waters arising on the Wehner territory, the specific directions in the engineering plans as to how that drainage was to be accomplished were also a part of the contract and should take precedence over the language relied upon by the plaintiff.

■■■ We note that a contract is ambiguous if it is reasonably susceptible of being understood in more than one sense or is obscure in meaning. (*Boise Cascade Home & Land Corp. v. Utilities, Inc.* (1984), 127 Ill. App. 3d 4, 468 N.E.2d 442.) In construing an ambiguous or inconsistent contract, the fundamental question is always the intent of the parties, which intent may be gathered from all the facts and circumstances surrounding the making of the contract. (*Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 75 N.E.2d 874; *In re Estate of Klinker* (1979), 80 Ill. App. 3d 28,

399 N.E.2d 299.) Furthermore, a court may determine the parties' intent by looking to the interpretation which the parties themselves have placed on the agreement as shown by their contemporaneous or subsequent acts. (*Thread & Gage Co. v. Kucinski* (1983), 116 Ill. App. 3d 178, 451 N.E.2d 1292.) Additionally, we note that where one intention is expressed in one clause of an instrument and a different, conflicting intention appears in another clause of the same instrument, effect should be given to the clause which is more specific, and the general clause should be subjected to such modification or qualification as the specific clause makes necessary. *McDonald's Corp. v. Butler Co.* (1987), 158 Ill. App. 3d 902, 511 N.E.2d 912.

■ Applying the above principles to the circumstances of the instant case, we find that the trial court properly concluded that the defendant did not breach the contract. The engineering plans provided the specific methods by which the general purposes of the contract were to be accomplished and thus served to modify and qualify the general language relied upon by the plaintiff.

More importantly, the plans showed that the flow of water from the 692-acre area was generally in a southerly direction into the plaintiff district. Even so, the county courts specifically approved those plans. In so doing, both courts stated that the plans disclosed "in full and in detail, the entire plan and scheme of drainage." In light of the approval of the engineering plans by the county courts and the original district commissioners, we find that it can be inferred that the parties and the courts contemplated that as a part of the parties' mutual obligation water from the 692-acre area would drain into the plaintiff district.

■ We next turn to the plaintiff's statutory claim as set forth in count III of its amended complaint. Section 11–8 of the Code provides for the relief requested by the plaintiff only when the parties have not entered into a written contract concerning the matter in dispute. (Ill. Rev. Stat. 1989, ch. 42, par. 11—8.) Here, the parties specifically agreed by written contract that each district would construct and maintain its own ditches, drains, levees, and pumping plants without contribution from the other district. Accordingly, the trial court properly denied the plaintiff relief.

The judgment of the circuit court of Hancock County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.