FRED W. BRZOZOWSKI, Plaintiff-Appellee and Cross-Appellant, v. NORTHERN TRUST COMPANY, Defendant-Appellant and Cross-Appellee.

First District (1st Division) No. 1—92—0434

Opinion filed June 1, 1993.

Coffield, Ungaretti & Harris (Kevin M. Flynn and Ann L. Gibson, of counsel), and The Northern Trust Company, Legal Department (Rose A. Ellis, of counsel), both of Chicago, for appellant.

Law Offices of Joseph A. Macaluso, of Chicago (Joseph A. Macaluso and Robert J. Shelist, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Fred Brzozowski brought a declaratory judgment action against defendant The Northern Trust Company to determine plaintiff's rights and obligations as the guarantor under a guaranty agreement entered into with defendant. Plaintiff specifically sought the return of funds being held by defendant and a declaration that any liability of plaintiff to defendant is released and extinguished. After a bench trial, the circuit court held that the guaranty between plaintiff and defendant was enforceable and that plaintiff was liable to defendant under the terms of it in the amount of $38,100. The circuit court also found that plaintiff was liable, pursuant to the guaranty, for defendant's attorney fees and costs incurred in connection with enforcing the guaranty and collecting the indebtedness in the maximum amount of $8,165.77. Further, the court ordered that the remainder of plaintiff's funds being held by defendant be released. Finally, the court found that the defenses of release of collateral, impairment of collateral and material change were waived by the terms of the guaranty.

Defendant appeals the circuit court's judgment limiting the attorney fees and expenses which it could recover from plaintiff and restricting its right of setoff. Additionally, defendant appeals the order granting plaintiff leave to amend his complaint to include a count for reformation.

Plaintiff filed a cross-appeal. He argues that the circuit court erred in finding that (1) a valid and enforceable contract existed between him and defendant; (2) he was not entitled to rescission of the guaranty as a matter of law; (3) the waiver language of the guaranty

applied to the facts of this case; (4) he failed to establish a *prima facie* case of lack of good faith; and (5) he was responsible for defendant's attorney fees and costs.

Plaintiff and defendant entered into a guaranty agreement on July 25, 1985, whereby plaintiff guaranteed the indebtedness of Nicholas J. Ahrens to defendant. The preprinted form guaranty states that it applies to all indebtedness and other obligations of Ahrens to defendant. The amount of $38,100 was typed into the right of recovery limitation provision. There was also a provision in which plaintiff guaranteed the interest on the indebtedness and all expenses including attorney fees and legal expenses incurred by defendant in endeavoring to collect the above-mentioned indebtedness and in enforcing the guaranty.

The debt underlying the guaranty was owed by Ahrens to defendant and was secured by, *inter alia*, an associate membership to the Chicago Board of Trade (CBOT). Due to tax deficiencies, indebtedness to defendant and other personal indebtedness, Ahrens decided to sell his CBOT membership for $272,000. The outstanding balance of Ahrens' indebtedness to defendant at the time of the sale of the membership was $262,000, and his debt to the Internal Revenue Service (IRS) was in excess of that owed to defendant. The proceeds of that sale were subject to the CBOT's Exchange Rule to Hierarchy of Claims. Ahrens, the IRS and defendant, through loan officer Robert Jones, agreed to a certain distribution of the proceeds from that sale. After the sale, defendant received $100,000, the IRS received $122,000 and Ahrens retained $50,000 in order to continue trading. Jones testified at trial that he believed that the agreement and resulting distribution were in the best interests of defendant, plaintiff and Ahrens, reasoning that defendant received a significant payment towards Ahrens' debt, Ahrens remained solvent and defendant did not need to call the guaranty.

Subsequent to the CBOT membership sale, Ahrens continued to make payments to defendant. Eventually, however, Ahrens began having financial difficulty. In October 1990, defendant discussed with plaintiff the poor payment record of Ahrens, but at that time did not call for payment under the guaranty. On December 14, 1990, defendant notified plaintiff of its intent to enforce the guaranty because of Ahrens' failure to pay the underlying debt. Under the terms of the guaranty, defendant asserted its right to set off amounts owed by plaintiff under the guaranty by holding one of his depository accounts in the amount of $77,436.86. On March 18, 1991, plaintiff filed the de-

claratory judgment action. After the bench trial, defendant filed this appeal and plaintiff cross-appealed.

The logical manner in which to review the issues presented here is to resolve plaintiff's cross-appeal issues prior to defendant's issues. Thus, we will discuss plaintiff's five cross-appeal issues and then address defendant's three issues on appeal.

On cross-appeal, plaintiff contends that the circuit court erred in finding that the guaranty was an unambiguous, valid and enforceable contract. Plaintiff argues that the guaranty is ambiguous because the first paragraph indicates that he is liable to defendant absolutely and unconditionally for Ahrens' entire indebtedness including expenses and attorney fees incurred in endeavoring to collect such indebtedness and in enforcing the guaranty, but the second paragraph limits defendant's right of recovery against him to $38,100. The guaranty is a standard preprinted form. The dollar amount limitation of the right of recovery was typed onto the form and prominently stands out from the other provisions in it.

■■ Ambiguity exists in a contract where, as written, the contract is susceptible to more than one meaning. (*Lease Management Corp. v. G.I.C. Financial Services* (1990), 202 Ill. App. 3d 188, 559 N.E.2d 880.) However, where ambiguities exist in a contract between two provisions, the more specific provision relating to the same subject matter controls over the more general provision. (*Lima Lake Drainage District v. Hunt Drainage District* (1990), 204 Ill. App. 3d 521, 561 N.E.2d 1351.) Therefore, where one intention is expressed in one provision of a contract and a conflicting intention appears in another provision, full effect should be given to the more principal and specific provision, and the general provision should be subjected to such modification or qualification as the specific provisions make necessary. (*McDonald's Corp. v. Butler Co.* (1987), 158 Ill. App. 3d 902, 511 N.E.2d 912.) Furthermore, where an ambiguity exists between a typed provision and the printed form, then the typed provision is to be given effect over the printed provision. (*Farmers & Mechanics Bank v. Davies* (1981), 97 Ill. App. 3d 195, 422 N.E.2d 864.) Where a court is able to determine the meaning of the language in a contract, the express provisions govern and no construction or inquiry as to intent is necessary. *P.A. Bergner & Co. v. Lloyds Jewelers, Inc.* (1986), 112 Ill. 2d 196, 492 N.E.2d 1288.

■■ The guaranty in the instant case does contain two contrary provisions in the first and second paragraphs regarding the amount recoverable from plaintiff. The circuit court properly gave effect to the typed provision limiting the amount recoverable from plaintiff to

$38,100 plus attorney fees and costs in collecting and enforcing the guaranty. Accordingly, we affirm the circuit court's finding that the complained-of contradiction in the first and second paragraphs did not render the guaranty invalid or unenforceable.

■ Next, plaintiff argues that he is entitled to rescission of the guaranty as a matter of law because he intended that his obligation under the guaranty be limited to $38,100. Illinois does recognize a right to rescind a contract based upon unilateral mistake. (See *Cummings v. Dusenbury* (1984), 129 Ill. App. 3d 338, 472 N.E.2d 575.) A unilateral mistake occurs if

> " '*** there is apparently a valid contract in writing, but by reason of a mistake of fact by one of the parties, not due to his negligence, the contract is different with respect to the subject matter or terms from what was intended, equity will give to such party a remedy by cancellation where the parties can be placed *in statu quo.*' " (*Cummings*, 129 Ill. App. 3d at 342, 472 N.E.2d at 578, quoting *Steinmeyer v. Schroeppel* (1907), 226 Ill. 9, 13, 80 N.E. 564, 565.)

The three requirements for rescission based upon unilateral mistake are (1) the mistake must relate to a material feature of the contract, (2) the mistake must have occurred despite the exercise of reasonable care, and (3) the other party must be placed in the position it was in prior to the contract being made. *John J. Calnan Co. v. Talsma Builders, Inc.* (1977), 67 Ill. 2d 213, 367 N.E.2d 695.

■ In the case at bar, the alleged mistake, the amount of plaintiff's maximum obligation to defendant, is a material feature of the contract. The circuit court, however, found that the specific typed provision limiting plaintiff's responsibility to $38,100 be given effect and we affirmed that finding. Thus, there was no mistake as plaintiff alleges. Furthermore, defendant cannot be placed in the position it was in prior to the guaranty being signed. Defendant loaned Ahrens money relying on plaintiff's execution of the guaranty. Defendant would have to be able to receive the loaned money back if it were to be placed in the position it was in prior to the execution of the guaranty. Clearly, defendant cannot get the loaned money back from Ahrens and that is the reason it enforced the guaranty. Therefore, we affirm the circuit court's refusal to rescind the guaranty.

■ Plaintiff's third contention is that the circuit court erred in applying the waiver language of the guaranty to the facts of this case. Plaintiff argues that defendant had an affirmative obligation and duty to collect the full amount of the proceeds from the sale of Ahrens' CBOT membership and satisfy and extinguish Ahrens' indebtedness.

The pertinent part of the waiver language of the guaranty is as follows:

"[Defendant] may at any time and from time to time, without notice to [plaintiff], take any or all of the following actions without affecting or impairing the liability of [plaintiff] on this guaranty: (a) renew or extend time of payment of the Indebtedness; (b) accept, substitute, release or surrender any security for the Indebtedness ***. The liability of [plaintiff] under this guaranty shall in no way be affected or impaired by any failure or delaying in enforcing payment of the Indebtedness or this guaranty or any security therefor, or in exercising any right or power in respect thereto, or by any compromise, waiver, settlement, change, subordination, modification or disposition of the Indebtedness or of any security for the Indebtedness or for this guaranty."

The guaranty further states that "there shall be no obligation on the part of [defendant], at any time, to resort for payment to [Ahrens] or any other guaranty or to any security for the Indebtedness."

A guarantor may consent to changes to an underlying debt or to releases of security for such a debt by clear language in the guaranty. (*Bank of Homewood v. Sjo* (1983), 113 Ill. App. 3d 179, 446 N.E.2d 1214.) In *Bank of Homewood*, the appellate court held that a guarantor was not released from his obligations under a guaranty due to the lender's release of a co-debtor from his responsibilities of the underlying debt, because the language of the guaranty provided that

"any and all such collateral and security and guaranties and *other obligors*, if any, may, from time to time, without notice to or consent of the undersigned, be sold, *released* *** without in any manner affecting or impairing the liability of the undersigned." (Emphasis added.) *Bank of Homewood*, 113 Ill. App. 3d at 181-82, 446 N.E.2d at 1216.

Just as in *Bank of Homewood*, where the lender had a right to release a co-debtor without affecting the validity of the guaranty, defendant in the instant case had the right to release Ahrens' collateral. Moreover, according to the terms of the guaranty, defendant had no obligation to collect the full amount of the proceeds from the sale of that collateral. The guaranty states that defendant is entitled to release the collateral and enter into any settlement regarding it without affecting or impairing the guaranty. Thus, we hold that the circuit court properly applied the guaranty's waiver language to the facts of this case and found that the release of the collateral and subsequent

settlement regarding proceeds from the sale of it in no way affected defendant's ability to enforce the guaranty.

Fourth, plaintiff argues that the circuit court erred in failing to find that he had established a *prima facie* case of lack of good faith. Plaintiff bases his assertion of lack of good faith on the fact that defendant failed to disclose the details of the agreement between it, Ahrens and the IRS regarding distribution of proceeds from the sale of the CBOT membership.

A guaranty includes an implied obligation of good faith between the parties in regard to the transaction. (*Morris v. Columbia National Bank* (N.D. Ill. 1987), 79 Bankr. 777.) This duty of good faith requires the lender not to injure the guarantor by action or omission and not to act inconsistently with the guarantor's rights. (*Morris*, 79 Bankr. at 785, quoting *Barrett v. Shanks* (1943), 382 Ill. 434, 47 N.E.2d 481.) The lender, however, is not in a fiduciary relationship with the guarantor, and consequently, "the threshold for finding that [defendant] did not act in good faith amounts to the same standard as fraudulent conduct." (*Morris*, 79 Bankr. at 785.) Thus, a lender has a good-faith duty to disclose circumstances which materially increase the risk to the guarantor, to avoid working a fraud on him. *Morris*, 79 Bankr. at 785; *McHenry State Bank v. Y & A Trucking, Inc.* (1983), 117 Ill. App. 3d 629, 454 N.E.2d 345.

Plaintiff's reliance on *Morris* and *McHenry State Bank* is misplaced. In *Morris*, the bankruptcy court did not consider the issue of good faith and, therefore, the case was remanded for such determination. (*Morris*, 79 Bankr. at 785.) In the case at bar, the circuit court fully considered plaintiff's claim of lack of good faith and found that he did not establish a *prima facie* case. *McHenry State Bank* is inapplicable here because there was no evidence that the guaranty in that case contained any waiver language which would allow the lender to release collateral. Accordingly, the lender's failure in *McHenry State Bank* to perfect a security interest materially increased the guarantor's risk beyond that contemplated by the guaranty. In the instant case, however, the guaranty clearly permits defendant to release the collateral and enter into settlements regarding it, without notice to plaintiff and without affecting the enforceability of the guaranty.

Since defendant was allowed by the guaranty to release collateral and enter into settlements, plaintiff had knowledge that his risk existed throughout the duration of the guaranty. Therefore, defendant's actions regarding the sale of the CBOT membership and the settlement agreement concerning the proceeds therefrom did not materially increase any risk of which plaintiff was or should have been aware.

We agree with the circuit court that there was no evidence of fraudulent conduct on the part of defendant or any indication of bad faith.

■ Fifth, plaintiff argues that because of the amount typed into the right of recovery provision in the guaranty, defendant cannot recover more than $38,100 from him. Plaintiff specifically contends that the $38,100 amount includes not only the debt amount, but the legal expenses and attorney fees which defendant may collect from him. The guaranty, however, is clear. It states that defendant's right of recovery against plaintiff is "limited to the amount of $38,100 *plus* the interest on such amount and *plus* all expenses hereinbefore mentioned." (Emphasis added.) The expenses "hereinbefore mentioned" include attorney fees and legal expenses paid or incurred by defendant in collecting and enforcing the guaranty. We, therefore, find that the circuit court did not err in finding that plaintiff was responsible for attorney fees and expenses in addition to the $38,100.

Now we review defendant's issues on appeal. Defendant initially argues that the circuit court erred in failing to enforce the provisions of the guaranty regarding the payment of attorney fees and costs in connection with the underlying litigation from which this appeal originates. The circuit court found that plaintiff should not be held responsible for any of defendant's attorney fees or other expenses related to the instant lawsuit. We agree.

■ The guaranty states that plaintiff is obligated to pay all expenses including attorney fees and costs paid or incurred by defendant in endeavoring to collect the indebtedness and in enforcing the guaranty. Defendant is correct that it is well-settled that courts will enforce provisions in contracts for the award of attorney fees. (*Hadley Gear Manufacturing Co. v. Zmigrocki* (1986), 152 Ill. App. 3d 358, 502 N.E.2d 6.) Where parties have agreed to shift the obligation for attorney fees, the court will award reasonable attorney fees according to the specific provisions of the contract. *334 Barry In Town Homes, Inc. v. Farago* (1990), 205 Ill. App. 3d 846, 563 N.E.2d 856; *In re Estate of Szorek* (1990), 194 Ill. App. 3d 750, 551 N.E.2d 697.

In the case at bar, defendant held one of plaintiff's depository accounts in the amount of $77,436.86. Out of this amount, $38,100 was properly applied pursuant to the guaranty to pay down the indebtedness covered by it. Defendant claims that the remainder of those funds, approximately $39,336.86, was being held to ensure plaintiff's obligation under the guaranty to pay attorney fees and costs incurred in collecting the indebtedness. Thus, defendant was holding funds to cover legal fees and costs in an amount greater than the indebtedness plaintiff guaranteed. As a result of defendant's blatant overreaching,

plaintiff filed the declaratory judgment action. The circuit court has discretion to determine the reasonableness of attorney fees and costs pursuant to contractual provisions. (*Mercado v. Calumet Federal Savings & Loan Association* (1990), 196 Ill. App. 3d 483, 554 N.E.2d 305.) Since defendant's overreaching caused plaintiff to file this case, the circuit court's decision that plaintiff is not responsible for defendant's attorney fees and costs associated with it because it would be unreasonable is not an abuse of discretion.

Defendant's next contention is that the circuit court's decision in limiting plaintiff's obligation to pay defendant's attorney fees and costs in endeavoring to collect the indebtedness was unreasonable. Defendant, citing *The Northern Trust Co. v. Brown* (N.D. Ill. August 31, 1992), No. 91 C 3136, argues that the guaranty covers all legal costs and fees in connection with collecting Ahrens' total indebtedness to it, which exceeded $200,000. The circuit court found and we agreed that plaintiff guaranteed Ahrens' indebtedness for the principal amount of $38,100, not $200,000. In *The Northern Trust Co.* case cited by defendant, there is no indication that there was an amount typed into the right of recovery provision in the guaranty. In the instant case, there was a typed amount, and that fact distinguishes this case from the above-cited case.

In the case at bar, the circuit court held that the maximum amount of attorney fees and/or costs of collection sought from plaintiff cannot exceed the percentage that the principal amount of the guaranty bears to the total amount of the debt which is sought to be collected, provided that such costs and fees are reasonable. Using that formula, the circuit court further found that defendant was not entitled to hold more than $8,165.77 for attorney fees and costs, which is 21.43% of $38,100. We reiterate that the circuit court's determination concerning awarding of attorney fees and costs is discretionary and should not be reversed absent a clear abuse of discretion. (*Galowich v. Beech Aircraft Corp.* (1991), 209 Ill. App. 3d 128, 568 N.E.2d 46.) We find that the court's determination of attorney fees and costs was reasonable.

■ Finally, defendant argues that the circuit court erred in granting plaintiff leave to file an amendment to his complaint to include a count for reformation because he did not raise the theory at trial and there was no evidence in the record to support such a theory. Section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(c)) provides that pleadings may be amended at any time, before or after judgment, to conform the pleadings to the proof. The decision to allow an amendment to the pleadings at any time prior to

final judgment lies within the sound discretion of the circuit court. (*Rosengard v. McDonald* (1990), 205 Ill. App. 3d 208, 562 N.E.2d 583.) Thus, the circuit court's decision will not be disturbed on review except in cases of clear abuse of discretion. (*Trident Industrial Products Corp. v. American National Bank & Trust Co.* (1986), 149 Ill. App. 3d 857, 501 N.E.2d 273.) The test for determining whether a court's discretion was properly exercised in permitting an amendment is whether allowance of the amendment furthers the ends of justice. *Trident Industrial Products*, 149 Ill. App. 3d 857, 501 N.E.2d 273.

The circuit court determined that plaintiff guaranteed $38,100 of Ahrens' underlying indebtedness to defendant, which was far in excess of that amount. However, since the guaranty was silent as to how much responsibility plaintiff had regarding legal fees and costs, the circuit court reformed it by imposing the formula discussed above. The record and the appellate briefs do not divulge any evidence that the circuit court abused its discretion in allowing plaintiff to amend the complaint.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.