66 F.3d 328
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
TELPRO, INCORPORATED, Plaintiff-Appellant, Cross-Appellee,
v.
Anthony RENELLO, Michael DiMaggio, William Degironemo, et
al., Defendants-Appellees, Cross-Appellants.
 Nos. 94-2964, 94-3048.
 United States Court of Appeals, Seventh Circuit.
 Argued June 7, 1995.
Decided Sept. 12, 1995.
 
 Before COFFEY, BAUER and MANION, Circuit Judges.
 
 ORDER
 
 1
 Telpro filed suit in federal court seeking to recover from Anthony Renello, Michael DiMaggio, and William DeGironemo $48,000 in past due invoices for telecommunications equipment. The district court held that DiMaggio and DeGironemo were only liable for $19,803.49 of the debt, less a $9,000.00 credit for a payment made on the debt. (Renello was never served.) The district court also awarded Telpro attorney's fees in the reduced amount of $12,561.19. Both parties appeal. We affirm.
 
 I. Background
 
 2
 Beginning in 1989 Anthony Renello conducted business out of Arizona under the name of Great Western Telecom ("Great Western of Arizona"), buying and selling telecommunication equipment. Renello purchased telecommunication equipment for his business from Telpro, Inc. Renello's contact at Telpro was Telpro sales representative Tres Friend. Friend established a line of credit for Renello and took his orders by phone, billing Renello at a later date.
 
 
 3
 Apparently hoping to expand his business, Renello entered into a written agreement with William DeGironemo and Michael DiMaggio on November 6, 1990, in which the three agreed to form a corporation known as Great Western Telecom, Inc. to be operated out of Illinois ("Great Western of Illinois"). The agreement provided that the corporation would be equally owned by the three and that the three would share profits and losses equally after expenses. The agreement further provided that DeGironemo would provide funding, DiMaggio would provide secretarial services, and Renello would run the daily operations. No corporation, however, was ever formed. Nonetheless, after the parties entered into the November 6, 1990 agreement, Renello ordered telecommunication equipment from Telpro. This equipment was billed to and shipped to Great Western of Illinois. Between November 6, 1990 and November 29, 1990, Telpro, Inc. shipped equipment to Great Western of Illinois at a price totaling $19,803.49. Included with the equipment were invoices detailing the purchases. These invoices also contained on their reverse side additional terms and conditions for the sale of the equipment. Paragraph 13 of these terms and conditions required the purchaser to pay, upon default, reasonable attorney's fees and other disbursements associated with collection.
 
 
 4
 Great Western of Illinois made a partial payment of $9,000.00 on the $19,803.49 due, but failed to pay the remaining balance of $10,803.49. Equipment ordered by Renello prior to the execution of the November 6, 1990 agreement was also delinquent in the amount of $25,923.72. Telpro attempted to collect on the delinquent invoices from Renello, DiMaggio, and DeGironemo, but these efforts proved futile. Telpro then filed suit in the district court for the Northern District of Illinois, seeking recovery from DiMaggio, DeGironemo and Renello for all of the past-due invoices. Telpro, however, was unable to serve Renello. This left DiMaggio and DeGironemo to defend the suit, including Telpro's claims for payment for the equipment Renello ordered prior to the November 6, 1990 agreement.
 
 
 5
 Following a bench trial, the district court found that on November 6, 1990 DiMaggio, DeGironemo and Renello had formed a partnership. The district court then reasoned that as partners, DiMaggio and DeGironemo were liable for purchases Renello made on behalf of the partnership, that is, any purchases Renello made on or after November 6, 1990. However, for the purchases that Renello made between May of 1990 and November 6, 1990, the district court held that DiMaggio and DeGironemo were not liable, since they had not yet become partners with Renello.
 
 
 6
 Telpro then moved for an award of interest, and requested attorney's fees of $22,337.67 based on Paragraph 13 of the purchase invoices. The district court denied certain elements of the attorney's fees request as unreasonable and reduced the remaining amount by 40 percent to $12,561.19.
 
 II. Analysis
 
 7
 On appeal, Telpro argues that the district court erred in finding that DiMaggio and DeGironemo were not liable for the equipment orders Renello made prior to the execution of the November 6, 1990 agreement. Telpro also claims that the district court erred in reducing its request for attorney's fees. DiMaggio and DeGironemo cross-appeal, contesting the award of any attorney's fees. For their part, they claim that the district court erred in finding them liable for attorney's fees on the basis of Paragraph 13 of the purchase invoices. In the alternative they claim that the district court's 40 percent reduction was insufficient.
 
 A. Jurisdiction
 
 8
 As an initial matter, we touch briefly on our jurisdiction. The complaint in this case was filed in the district court alleging diversity of citizenship and damages of $48,727.21 plus contractual attorney's fees, as well as interest, costs and a claim for statutory interest based on vixatious delay in payment. In determining the amount in controversy for purposes of diversity jurisdiction, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claims are really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemn. Co. v. Red. Cab Co., 303 U.S. 283, 288-89 (1938).
 
 
 9
 Although the question is close, we find that the district court properly exercised diversity jurisdiction. The amount in controversy included Telpro's claim for $48,727.21, and while Telpro failed to reduce this amount by the $9,000.00 partial payment, Telpro's complaint also sought contractual attorney's fees, interest, costs and a claim for statutory interest on vexatious delay of payment. While interest and costs are generally not included in determining the amount in controversy, "where a litigant has a right, based on contract, statute, or other legal authority, to an award of attorney's fees if he prevails in the litigation, a reasonable estimate of those fees may be included in determining whether the jurisdictional minimum is satisfied." Sarnoff v. American Home Prod. Corp., 798 F.2d 1075, 1078 (7th Cir.1986). In this case, Telpro sought contractual attorney's fees in excess of $22,000 based on paragraph 13 of the purchase invoices. This, along with the $39,727.21 allegedly due based on Renello's orders, was sufficient to satisfy the amount in controversy requirement. Accordingly, jurisdiction was properly found based on diversity of citizenship.
 
 B. Partnership Formation and Liability
 
 10
 We first consider plaintiff's claim that the defendants were liable for equipment ordered by Renello prior to the execution of the November 6, 1990 agreement. The record contains the invoices evidencing these orders. These invoices and the testimony at trial establish that between May and November 6 of 1990, Renello ordered equipment from Telpro totaling $25,923.72. These invoices, however, listed Great Western of Arizona or DTS, of Illinois[1] as the purchaser--not Great Western of Illinois. Telpro nonetheless contends that Renello ordered these products on behalf of a partnership he had formed with DiMaggio and DeGironemo in May of 1990. Telpro further claims that as partners, DiMaggio and DeGironemo were liable for the debts Renello incurred on behalf of the partnership, including these invoices.
 
 
 11
 Telpro is correct in its assertion that partners are liable for the debts of the partnership. 805 ILCS 205/15. See also Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis, 849 F.2d 264, 270 (7th Cir.1988). But in order for Telpro to recover from DiMaggio and DeGironemo for the purchases Renello made between May and November 6, 1990, Telpro must establish that Renello made those purchases on behalf of the partnership. In this case, the district court, as trier of fact, found that a partnership between DiMaggio, DeGironemo, and Renello did not come into existence until they signed the agreement on November 6, 1990, and therefore the purchases Renello made pre-dating that agreement were not on behalf of the partnership.
 
 
 12
 "When federal judges act as triers of fact in diversity cases, all questions concerning the standard of appellate review are governed by federal law. This means principally the 'clearly erroneous standard....' " Mayer v. Gary Partners and Co., Ltd., 29 F.3d 330, 334 (7th Cir.1994). We thus review the district court's determination that the three formed a partnership on November 6, 1990 for clear error.
 
 
 13
 We cannot say that the district court was clearly erroneous in finding that DeGironemo, DiMaggio and Renello had formed a partnership on November 6, 1990.[2] That was the date the three executed the agreement. This finding is also supported by DeGironemo and DiMaggio's testimony that until the November 6, 1990 agreement was executed, they had not authorized Renello in any way to buy or sell equipment on their behalf. In fact, DeGironemo testified that he had not even met Renello until July or August of 1990, and they both testified that they had not discussed the possibility of entering into a business relationship with Renello until approximately October of 1990.
 
 
 14
 In response, Telpro argues that it has proved that the three were partners between May of 1990 and November 6, 1990 by showing that DiMaggio had access to and had retained property ordered by Renello prior to November 6, 1990. The testimony at trial, however, established that DiMaggio had access to that property because Renello had asked DiMaggio to store it for him, not because it was partnership property. The evidence also established that DiMaggio had retained the property after Renello disappeared, not because it was partnership property, but because it was Renello's property and Renello had disappeared leaving DiMaggio and DeGironemo holding the bag for all of the partnership's debts.
 
 
 15
 In support of its claim that a partnership existed between DiMaggio, DeGironemo, and Renello between May and November 6 of 1990, Telpro also points to evidence that DiMaggio signed a check on November 9 which contained a notation that it was in "partial pmt. on four (4) SL-1 MS." At trial Telpro presented evidence that three of the four SL-1 MSs referenced were purchased before November 6, 1990. Telpro claims that since DiMaggio signed a check for equipment purchased by Renello prior to November 6, 1990, the three were either partners before November 6, 1990 or the partnership had ratified the purchases Telpro made prior to November 6, 1990. Under either scenario, Telpro claims, DiMaggio and DeGironemo were liable for the equipment.
 
 
 16
 At trial, however, DeGironemo testified that Renello had told him that this money was a down payment for equipment which he was ordering from Telpro, rather than for a payment on equipment already purchased. DiMaggio's secretary similarly testified that Renello had said that "this was a partial payment on equipment that was to be shipped to his office." And since there is nothing about the check notation that indicates that it was for payment of previously purchased equipment--rather than as a partial payment for new equipment--we cannot say that the district court clearly erred in rejecting this as evidence that the partnership was formed prior to November 6, 1990.
 
 
 17
 Alternatively, Telpro claims that had the district court not excluded certain testimony, it would have been able to prove that Renello, DiMaggio, and DeGironemo had formed a partnership before November 6, 1990. We review a district court's evidentiary ruling for an abuse of discretion, Thomas v. United States, 41 F.3d 1109, 1119 (7th Cir.1994) and we will order a new trial based on an abuse of discretion in excluding evidence only if such error prejudiced substantial rights of the appellant. Id.
 
 
 18
 The testimony purporting to support Telpro's case was testimony by Telpro representative Tres Friend that Renello had told him in April of 1990 that he had sold his business name and expertise to a company in Chicago of which he was going to be a partner. The district court conditionally allowed this testimony, but in announcing its findings of fact and conclusions of law, the court concluded that this evidence was inadmissible because it was hearsay and because, under Illinois law, an agency cannot be established solely on the statements of the putative agent.
 
 
 19
 On appeal, Telpro goes to great lengths to demonstrate that Friend's testimony concerning statements Renello had made to him was admissible, either because the testimony was not hearsay or because it satisfied various exceptions to the prohibition on hearsay. We need not consider these evidentiary issues, however, because even if the district court had abused its discretion in excluding this testimony--a question we do not decide--Telpro would not be entitled to a new trial because any such error did not prejudice its substantial rights. Id.
 
 
 20
 We reach this conclusion for numerous reasons. First, we are not convinced that the testimony excluded even addressed the question of when the partnership was formed. Since the district court had conditionally allowed Friend to testify as to statements Renello made to him, we have that testimony before us. That testimony included the following statement by Friend: "Mr. Renello indicated that he had sold his business name and his expertise to a company of which he was going to become a principal in Chicago and that they were going to be needing a large amount of telecommunications equipment." Friend also testified that Renello "indicated that they were going to need a large amount of equipment and that we should work with him to help him find that equipment for this new company." This testimony, contrary to Telpro's portrayal, does not establish that Renello, DiMaggio, and DeGironemo had entered into a partnership in May of 1990. Instead it merely indicates that Renello had spoken with some investors about becoming a principal in a new business entity. Nothing in Renello's statements evidences that the parties had entered into such a business. Moreover, this is the only evidence which bore on whether the partnership existed, and Illinois law holds that the existence of a partnership cannot be proved merely by statements of the putative agency made outside of the presence of the principal.[3] City of Evanston v. Piotrowicz, 170 N.E.2d 569, 573 (Ill.1960). Also, the district court was the trier of fact and it had conditionally allowed the evidence, finding it inadmissible only in issuing its opinion. Under these circumstances, we conclude that any error resulting from the exclusion of this evidence did not prejudice Telpro's substantial rights.[4]
 
 
 21
 We conclude by noting that even if the evidence established that Renello, DiMaggio, and DeGironemo had formed a partnership prior to the execution of the November 6, 1990 agreement, the evidence presented at trial was insufficient to demonstrate that the orders Renello made between May and November 6, 1990 were made on behalf of the new partnership. Instead, the invoices presented at trial established that Renello made these purchases on behalf of Great Western of Arizona and to a separate entity, DTS, of Illinois. And the evidence also established that Renello had no authority to act on behalf of DTS.
 
 C. Attorney's Fees
 
 22
 The next issue presented on appeal concerns the propriety of the district court's award to Telpro of attorney's fees in the amount of $12,561.19. Telpro, DiMaggio, and DeGironemo claim that this award was improper. Telpro claims that it was too low; DiMaggio and DeGironemo claim that Telpro was not entitled to any attorney's fees, and if it was, the award was too high.
 
 
 23
 We begin by considering whether Telpro was entitled to any attorney's fees. The district court held that it was, based on the attorney's fees clause of Paragraph 13 contained in the purchase invoices. The district court concluded that this provision became part of the contract between Telpro and the partnership pursuant to Section 2-207 of the U.C.C. adopted in Illinois at Illinois Statute 5/2-207.[5]
 
 
 24
 Section 2-207 of the U.C.C. provides in relevant part:
 
 
 25
 Additional Terms in Acceptance of Confirmation.
 
 
 26
 (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
 
 
 27
 (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
 
 
 28
 (a) the offer expressly limits acceptance to the terms of the offer;
 
 
 29
 (b) they materially alter it; or
 
 
 30
 (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
 
 
 31
 810 ILCS 5/2-207.
 
 
 32
 In this case, the parties were "merchants." The terms contained in the purchase invoice, including the attorney's fees provision of Paragraph 13, thus became part of the contract between the partnership and Telpro unless one of the exceptions enumerated in section 2 apply. The parties agree that Renello's offer (on behalf of the partnership) to purchase the telephone equipment was not limited to the terms of the offer and that neither Renello, DiMaggio, nor DeGironemo notified Telpro of any objection to the additional terms contained on the reverse side of the invoice, including Paragraph 13. The only question is whether Paragraph 13 materially altered the terms of the contract.
 
 
 33
 In Illinois, "the test for whether an additional term would be a material alteration in the contract is 'whether the addition constitutes an unreasonable surprise to one of the bargaining parties.' " Schulze & Burch Biscuit Co. v. Tree Top Inc., 831 F.2d 709, 713 (7th Cir.1987) (quoting Clifford-Jacobs Forging Co. v. Capital Eng'g & Mfg. Co., 437 N.E.2d 22 (Ill.App.1982)). In determining whether an additional term constitutes an unreasonable surprise, the course of conduct and prior dealings between the parties are relevant, as are trade practices. Comark Merchandising, Inc. v. Highland Group, Inc., 932 F.2d 1196, 1202-03 (7th Cir.1991). The determination is made on a case-by-case basis, and is a finding of fact which we review for clear error. Id.
 
 
 34
 In this case, the district court concluded that the attorney's fees clause in the invoice did not constitute an unreasonable surprise and therefore became part of the contract between Telpro and the partnership. That finding was supported by the evidence. Specifically, the evidence presented at trial established that the inclusion of an attorney's fees clause in the invoice was standard in the industry. In fact, Telpro presented evidence that the terms and conditions contained on the purchase invoices, including the attorney's fees provision, were developed and recommended by the National Association of Telecommunications Dealers. The course of conduct between Telpro and the partnership also negates an inference of unreasonable surprise since the partnership had placed seven different orders from Telpro, and with each order an invoice including the attorney's fees provision was sent to the partnership. Compare, Comark, 932 F.2d at 1202 (holding that attorney's fees provision constituted an unreasonable surprise in part because the dispute arose out of essentially one transaction).
 
 
 35
 Alternatively, DeGironemo and DiMaggio claim that this court should hold that an attorney's fees provision is, as a matter of law, an unreasonable surprise. In support of their position, they rely on Trans-Aire Intl., Inc. v. Northern Adhesive Co., Inc., 882 F.2d 1254, 1262-63 (7th Cir.1989), where this court held that an indemnification provision constituted a material alteration as a matter of law. While no Illinois court has addressed the question of whether an attorney's fees clause constitutes a per se material alteration, in Comark, 932 F.2d at 1202-03, we applied Illinois law and held that whether an attorney's fees provision constituted an unreasonable surprise was an issue of fact to be determined on a case-by-case basis. We find no reason to depart from our reasoning in Comark and accordingly reject DeGironemo and DiMaggio's argument that all attorney's fees provisions are material alterations.[6] In this case, the district court found that it was not an unreasonable surprise, and for the reasons stated above, we cannot say that that finding was clearly erroneous. Accordingly, Telpro was entitled to attorney's fees under the contract.
 
 
 36
 The amount of attorney's fees to which Telpro was entitled is another question. Telpro claims the district court's award of attorney's fees was too low and DeGironemo and DiMaggio claim that it was too high. In a diversity action such as this, state law applies and in this case, Illinois law governs. Champion Parts, Inc. v. Oppenheimer & Co., 878 F.2d 1003, 1006 (7th Cir.1989).
 
 
 37
 Illinois law provides that when a contractual provision allows for attorney's fees, only reasonable attorney's fees are allowed. Brzozowski v. Northern Trust Co., 618 N.E.2d 405, 411 (Ill.App.1993). The question is one of reasonableness and this is for the district court to decide after considering a number of factors including the responsibility required, the usual and customary charges for comparable services, the benefit to the client, and whether there is a reasonable connection between the fees and the amount involved in the litigation and the recovery obtained. LaHood v. Couri, 603 N.E.2d 1165, 1170-71 (Ill.App.1992). The court's decision is entitled to great deference and we will overturn it only for an abuse of discretion. Estate of Borst v. O'Brien, 979 F.2d 511, 517 (7th Cir.1992); Brzozowski, 618 N.E.2d at 405.
 
 
 38
 In this case, the district court reduced Telpro's request for attorney's fees by 40 percent. In doing so, the district court explained that this reduction was appropriate because the issues involved in the case were not complex and because the plaintiffs succeeded in recovering less than 25 percent of the amount claimed as damages. The court also reasoned that such a reduction was appropriate because the plaintiff's application contained numerous errors and lacked specificity.
 
 
 39
 The district court adequately explained its rationale for the 40 percent reduction and we cannot say that the district court abused its discretion by not choosing a large or smaller percentage by which to modify the fee request.[7] We therefore affirm the award of attorney's fees.
 
 III. Conclusion
 
 40
 The district court found that Renello, DiMaggio, and DeGironemo had formed a partnership on November 6, 1990, and were thus liable for equipment orders Renello made on or after November 6, 1990. That finding was not clearly erroneous. Accordingly, Telpro cannot recover from DiMaggio and DeGironemo for purchases Renello made prior to November 6, 1990. The district court also did not commit clear error in finding that the attorney's fees provision contained on the purchase invoice became part of the contract for the sale of goods. Accordingly, the district court properly awarded Telpro attorney's fees, and it did not err in reducing the award by 40 percent. For these and the foregoing reasons, we AFFIRM.
 
 
 
 [1]
 DTS is a company wholly owned by DiMaggio. DTS was not joined as a party to this action and the evidence at trial established that Renello was not an agent of DTS and DTS did not ordered equipment at issue from Telpro
 
 
 [2]
 While the agreement provided that the three would form a corporation named Great Western Telecom, Inc., no attempt to incorporate was made. Nonetheless, in the agreement, the three agreed to share profits and losses, to contribute property or services to the business, and to run the business together. Under Illinois law "[t]he requisite of a partnership are that the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or profits...." Rizzo v. Rizzo, 120 N.E.2d 546, 551 (Ill.1954). Since the agreement contained the required elements of a partnership, the district court properly found that the entity Renello, DiMaggio and DeGironemo had formed constituted a partnership. The district court also did not commit clear error in finding that the partnership came into existence on November 6, 1990
 
 
 [3]
 Telpro argues that other evidence also established the existence of the partnership, namely the check notation discussed infra at 5 and the retention of equipment ordered by Renello prior to November 6, 1990. The district court, however, found that the only evidence indicating that DiMaggio and DeGironemo had established a partnership prior to May of 1990 came from Friend's testimony. Accordingly, the district court must have rejected Telpro's take on the other evidence. We cannot say that this finding was clearly erroneous
 
 
 [4]
 On appeal, Telpro also claims that the district court improperly excluded testimony of Dennis McBroom, another Telpro representative, concerning his conversations with Renello. A review of the record, however, reveals that the district court did not exclude this evidence. And even if it had, there was no error in doing so
 
 
 [5]
 The parties agree that Illinois law governs and that the U.C.C. applies in this case
 
 
 [6]
 In Comark we affirmed the district court's conclusion that an attorneys' fees provision constituted a material alteration, while here we affirm the district court's conclusion that the attorneys' fees provision did not constitute a material alteration. The different outcomes are explained not only by the fact that in Comark there was only one invoice while here there were seven, but also because in Comark there was no proof of industry standards or course of conduct as there was in this case. And since the determination is made on a case-by-case basis and reviewed for clear error, we find no conflict
 
 
 [7]
 Telpro also argued in its brief that the district court erred in reducing its attorney's fees award by $1,326.00. Telpro claims that the $1,326.00 represents charges relating to deposition and investigations costs which are recoverable. We are baffled by Telpro's argument, however, because the district court's gross award of attorney's fees (before the 40 percent reduction) clearly included the $1,326 claimed. The district court did reject a $150 travel expense related to a deposition, but in its brief, Telpro did not present this as error. It has therefore waived any objection to this reduction